ELIZABETH M. LEONARD vs. CHARLES W. GILLETTE ET AL., ADMINISTRATORS.

Third Judicial District, Bridgeport, April Term, 1907.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

The fact that sixteen years before his death the defendants' intestate requested the plaintiff to look after him, which she did until his death, is not irrelevant to prove that the plaintiff's services during the last six years of the decedent's life were rendered at his request.

The question whether relevant evidence is or is not too .remote to be material under all the circumstances of the case, is one addressed to the discretion of the trial judge, whose decision is final unless the record shows that such discretion has been abused.

Evidence that the intestate possessed a competence is not wholly

irrelevant to prove that he requested and expected to pay for services rendered in caring for him, and also to explain the fact that for several years the services were performed without insisting upon payment.

In the present case the trial judge in his charge to the jury expressly limited this evidence to the purposes above stated, although in admitting it he remarked that he believed a similar enquiry had been allowed in another case as having some possible bearing on the value of the services. *Held* that this remark, if in any event it could be regarded as prejudicial, was certainly rendered harmless by the charge.

Strictly speaking, the law of evidence is a part of the law of procedure, and harmless error in its application is not ground for a retrial.

In most instances the trial judge is in a far better position to settle doubtful questions with reference to the application of the rules of evidence, than a court of errors with only the printed record before it, and therefore appeals based upon rulings as to the relevancy and remoteness of evidence must ordinarily prove futile.

Argued April 9th—decided May 1st, 1907.

ACTION to recover the reasonable worth of services rendered the defendants' intestate, brought to the Superior Court in New Haven County and tried to the jury before *Case, J.;* verdict and judgment for the plaintiff for $1,500, and appeal by the defendants for alleged errors in rulings on evidence. *No error.*

The complaint alleged that for six years prior to the date of the death of Joseph E. Lawrence, the defendants' intestate, the plaintiff performed housework, general work, boarded and cared for said Lawrence continuously, and nursed him when he was sick, on his request and promise to pay for the same; that said services were reasonably worth $3,225; that the plaintiff duly presented to the defendants, as administrators of said Lawrence, her claim for payment for said services, which claim was disallowed.

The answer denied the allegations of the rendition of services and of their value, and averred that if said Lawrence was at any time indebted to the plaintiff for services as alleged, he had made full payment for the same, which averment the plaintiff denied. On these issues the case was tried to the jury.

The rulings on evidence, assigned in the appeal as error, are three : —

1. The plaintiff offered evidence to show that she had been a tenant in one of the houses of Lawrence for sixteen years before his death, and that this house stood near that in which Lawrence resided alone during the same period. The plaintiff testified as to the relations existing between Lawrence and herself during the period of her tenancy, but claimed to recover only for services rendered during the six years next preceding Lawrence's death. Upon her direct examination she was asked : "When you first began to work for him sixteen years ago, what did he ask you to do?" The defendants objected to the question and the court admitted it, the defendants duly excepting. The witness answered : "He asked me to see him and take care of him." The witness subsequently testified that Lawrence repeatedly, during the six years before his death, promised that she should be rewarded for her services.

2. The defendant introduced as a witness one Louis C. Archambault, one of the appraisers of the Lawrence estate. Upon his cross-examination he was asked if he appraised all of the estate, and having answered that he did, he was further asked : "How much did it appraise?" The defendants objected to this question. The plaintiff claimed it as material to show that Lawrence "was acting in good faith by " the plaintiff ; "to show the condition of affairs there." The court said : " I believe, in the case of *Grant* v. *Grant*," a similar question was admitted "as possibly bearing on the value of the services. I will admit it for that limited purpose." The defendants duly excepted, and the witness answered : "Somewhere in the neighborhood of $24,000 or $25,000, I believe." No inquiry was made of said witness concerning the appraisal or value of said estate on his examination in chief, nor of any other witness during the trial, nor was there any other evidence offered by either party of the value or appraisal of said estate. In the charge the court cautioned the jury against

putting the wrong estimate on this testimony as to the amount of the Lawrence estate, and said: "I have already cautioned you that the rule of damages in this class of cases does not concern itself with the amount of the estate, or the size of the expected inheritance. The only legitimate purpose of the testimony before you lies in its claimed tendency to corroborate the claim of the plaintiff, that the deceased as a man living quite alone and in possession of a competence expected to, and understood that he was expected to, pay for such services as the plaintiff may have rendered. It must have no effect beyond this in any event. The value of the services, if you come to that, is a matter to be determined quite apart from the size or value of the estate."

3. One Frank Lawrence, a nephew and heir at law of the decedent, was offered as a witness by the defendants. He testified at length as to his acquaintance with his uncle during the latter's last years and as to his uncle's methods of life, and said that on his visits to his uncle that he had never observed that he was being materially assisted or cared for by any one, and that he had not seen the plaintiff in attendance upon his uncle. He was not asked to give an opinion as to the value of the plaintiff's claimed services. The plaintiff was a witness on rebuttal, and in her direct examination testified that since the decedent's death she had had a conversation with Frank Lawrence regarding his uncle and in regard to her services for him. She was then asked: "Won't you tell the jury what it was?" To this question the defendants objected, on the ground that the conversation was not binding upon the administrators. It was claimed by the plaintiff as showing bias in the witness Lawrence. The court admitted the question, the defendants duly excepting. The witness answered: "I told him I was going to put in a claim, and he said, 'All right.' I told him I didn't want him to kick over it. I said, 'You know I have taken good care of your uncle, and I want my pay for it.' And he said, 'All right': he said, 'I won't kick over your

claim, if you don't kick over what I get.' I said, ' I have nothing to do with what you get. All I am looking for is what belongs to me.' " In the charge the court cautioned the jury in respect to this testimony as follows: " As to certain statements made by Lawrence, the nephew, to the plaintiff, after the elder Lawrence's death. You will be careful to remember, as I cautioned you when this testimony was admitted, that no statement of this witness, Lawrence, is of weight as tending to bind the estate, and his statements are admitted here only for the limited purpose of affecting his credibility as a witness, and it is for you, of course, to say whether they have any weight in that direction."

*William E. Thoms*, for the appellants (defendants).

*Ulysses G. Church*, for the appellee (plaintiff).

HAMERSLEY, J. The first exception is not well taken. It appearing that the plaintiff and Lawrence, the defendants' intestate, had stood in the same relations to each other for sixteen years, the fact that at the commencement of these relations Lawrence asked the plaintiff to look after him and take care of him is not irrelevant to the fact that during the last six years of this period the services of the plaintiff in taking care of Lawrence were rendered at his request. Whether or not the revelancy should be deemed too remote to be material, under all the circumstances of the case, was within the discretion of the trial judge, and the record does not indicate that this discretion was abused.

For similar reasons the second exception is not well taken. The fact that Lawrence possessed a modest competence, in connection with other facts, is not wholly irrelevant to the fact that Lawrence requested the plaintiff to perform for him the general duties of a housekeeper and nurse, promising to pay her the reasonable value of such services, nor to the fact that for six years she per-

formed these services without insisting upon payment. The expression of the judge at the time this testimony was admitted, of his belief that in another case a similar question had been admitted as possibly bearing on the value of the services, if in any event it could be regarded as harmful, was certainly harmless in view of the charge of the court upon this point.

The third exception is not well taken. The testimony of Frank Lawrence was to the effect that during his visits to his uncle the plaintiff had rendered the latter no assistance, and that so far as he knew his uncle during his last years had not been assisted or cared for by any one. The testimony of the plaintiff admitted in rebuttal, tended to show that the younger Lawrence did know that the plaintiff had taken care of his uncle. If it did not show this, its admission in connection with the charge of the court was harmless.

This appeal illustrates the necessity of calling attention to a seeming misconception as to the relative duties of a trial court and court of errors in respect to the application of the law of evidence to the peculiar conditions that may be developed in a trial. Strictly speaking, the law of evidence is a part of the law of procedure, and harmless error in its application in the course of a trial is not ground for new trial. In the main, its application to the circumstances of each case is a duty necessarily allotted to the trial court, and in most instances the judge conducting a trial is in a far better position to settle justly a doubtful application than a court of errors reading the printed record. The rule of logic or theory of chances which determines the relevancy of evidence must in nearly all cases of doubtful application be understood in connection with conditions and circumstances peculiar to the case on trial, evanescent in their character and difficult of adequate apprehension unless by the presiding judge. Appeals to this court based on alleged mistakes of the trial judge in the exercise of his power and discretion in determining such doubtful questions of relevancy and remoteness, must

ordinarily prove futile.   To entertain and discuss all such appeals would tend to promote prolixity, uncertainty, and injustice in trials, and to obscure rather than make clear the practical duties of the trial court; and for this court to set aside judgments and compel new trials for such immaterial or academic reasons would tend to defeat rather than to serve the administration of justice.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.